IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

OSCAR VAZQUEZ

   PLAINTIFF

   vs

*CIVIL NO.*_____
*COMPLAINT* (JURY TRIAL)

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE DETECTIVE
GERARD COUGHLIN, Shield No. 268; NEW
YORK CITY POLICE OFFICER "JOHN DOE",
each in his individual capacity and in his official
capacity,

   DEFENDANTS

───────────────────────────────────────────

## I.  INTRODUCTION

1. This is a litigation which arises out of an event which occurred on May 9, 2013 in the vicinity of 32-37 97th Street, Queens, New York.

2. On that date and at the location as described, the Plaintiff was approached by Defendant Gerard Coughlin and his partner whose name is unknown at this time.

3.  During the engagement, the unknown partner struck the Plaintiff in or about his face; and he was otherwise dragged to a New York City Police Department vehicle.

4.  There was no justification for the use of force employed by the unidentified Defendant New York City police officer.

5.  The Plaintiff was arrested and transported to the 115th Precinct; and, thereafter and as a consequence the injuries which he suffered as a consequence of the unnecessary and unreasonable and unjustified force utilized against the Plaintiff, he was transported

from the 115th Precinct to Elmhurst Hospital where he was treated and then released back into the custody of the New York City Police Department.

6.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

7.  The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

8.  Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

9.  Jurisdiction of this Court is also invoked pursuant to and in conjunction with the Americans with Disabilities Act, 42 U.S.C. Sections 12101, *et seq.*

10.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

11.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

12.  Venue resides in this Court, pursuant to 28 U.S.C. §1391 (a), (b) and (c), because the Defendant parties, all of some thereof, have offices for doing business in the geographic boundaries of the jurisdiction of the Court.

### III. THE PARTIES

13.  The Plaintiff is an American citizen of Hispanic national origin; and resident of the State of New York, the City of New York, and the County of Queens.

14.  The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

15.  Defendants "John Doe" and Gerard Coughlin, Queens Detective Area 115, Shield No. 268, are New York City Police Officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and violated  the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

### IV. ALLEGATIONS

16.  The Plaintiff is an American citizen of Mexican national origin.

17.   The Plaintiff presently resides in the City of New York, the County of Queens, and the State of New York.

18.   At the time of the event which gives rise to the within litigation, the Plaintiff resided in the City of New York, the County of Queens, and the State of New York.

19.   The Plaintiff is forty (40) years of age.

20.   The Plaintiff's birth date is September 21, 1975.

21.   The Plaintiff was born in the City of New York, the County of New York, and the State of New York.

22.   The Plaintiff attended LaSalle Academy in the City of New York, the County of New York (Manhattan) from which he graduated and received a high school diploma.

23.   Thereafter and for a brief period, the Plaintiff attended LeMonye College in Syracuse, New York.

24.   The Plaintiff also attended El Paso Community College when he lived in Texas for an extended period of time (from approximately 1995 through approximately 2003) before he then returned to New York City.

25.   The Plaintiff worked has worked in clerical and accounting positions.

26.   The Plaintiff presently receives SSI benefits and he has received the same for many years going back to his early to mid thirty's.

27.   At or about the time that the Plaintiff started receiving SSI benefits, the Plaintiff was diagnosed with a clinical mental disability condition.  While not diagnosed with schizophrenia, the Plaintiff has been diagnosed with a schizophrenia type condition that has as components: depression, anxiety, and paranoia.

28.   The Plaintiff is on prescribed medications.

29.   The Plaintiff presently receives treatment for his condition at an out-patient facility located at Mt. Sinai Hospital West (formerly St. Luke's-Roosevelt Hospital on 10th Avenue between 58th and 59th Streets).

30.   Previously the Plaintiff had received outpatient treatment at other facilities including at Transitional Services Incorporated in Jamaica, Queens, New York; at Elmhurst Hospital in Elmhurst, Queens, New York; and at Bellevue Hospital, in Manhattan, New York.

31.   While the Plaintiff endeavors to follow the prescribed medication regimen on which he has been placed and the treatment regimen associated therewith, he sometimes deviates from the same and does not take his medication; and/or he does not attend the treatment program in which he has been enrolled.

32.   On the date of the event out of which this litigation arises, the Plaintiff had been diagnosed with the schizophrenia type condition; and the Plaintiff received SSI benefits as a consequence of the disability which he suffers associated with that condition.

33.   On the date of the event out of which this litigation rises, the Plaintiff was then living in Corona, Queens, New York.

34.   The Plaintiff's s sister owned a house in East Elmhurst, New York.

35.   The house was located at 32-37 97th Street, East Elmhurst, Queens, New York 11369.

36.   The Plaintiff's sister is a younger sibling.

37.   The Plaintiff's sister is an occupational therapist.

38.   The Plaintiff's sister had two daughters, at the time (eleven and ten), who resided with her.  In addition, the Plaintiff's sister had twin sons who had just been born in January, 2013 and who, with her then husband, resided at the house, as well.

39.  In addition, the Plaintiff's parents resided at the house.

40.   Along with her husband, two daughters, and her parents, the Plaintiff's sister had moved to the residence in approximately February, 2012.

41.   The Plaintiff's parents are retired.

42.  The Plaintiff's father is a retired maintenance worker; and the Plaintiff's mother was a house-wife.

43.  The incident which gives rise to this litigation took place on May 9, 2013.

44.  The incident which gives rise to the litigation took place in a drive-way which is in front of the residence of the Plaintiff's sister at 32-37 97th Street, East Elmhurst, Queens, New York.

45.  Prior to the May 9, 2013 date of the event out of which the litigation derives, the Plaintiff had gone to his sister's residence in the early morning hours of May 6, 2013.

46.  The Plaintiff was smoking a cigarette on what can be described as a first floor outside porch type area; and he was lying down on the porch type area.

47.  The Plaintiff's mother came out and threw a blanket over him, causing the blanket to catch fire.

48.  The Plaintiff and his mother put out the fire.

49.  The fire was set accidentally.

50.  That notwithstanding, an argument ensued between the Plaintiff and his sister.

51.  The Plaintiff left his sister's residence and went home to his own residence in Corona.

52.  On May 9, 2013, the Plaintiff returned to his sister's residence at 32-37 97th Street, East Elmhurst, Queens, New York.

53.  The Plaintiff and his sister's husband, and a tenant who resided in the basement of the house, were outside in the driveway.  They were talking and having a beer.

54.  After about an hour, the tenant and the sister's husband left and returned to the house; and the Plaintiff remained in the driveway.

55.  The Plaintiff was speaking with his sister on the telephone; and they were arguing when she hung up.

56.  The Plaintiff was in a chair in the driveway of the house.

57.  Unbeknownst to the Plaintiff, his sister called the police to complain about the Plaintiff, including about what took place in the early morning hours of May 6, 2013.

58.  Defendants Coughlin and Doe arrived at the residence of the Plaintiff's sister.

59.  Defendants Coughlin and Doe arrived in an unmarked vehicle.

60.  Defendants Coughlin and Doe were in plain clothes.

61.  Defendants Coughlin and Doe parked their vehicle across from the residence of the Plaintiff's sister.

62.  Defendants Coughlin and Doe exited their vehicle and walked across the street toward where the Plaintiff was sitting in a chair.

63.  Defendant Coughlin and Doe approached the Plaintiff.

64.  Defendants Coughlin and Doe asked the Plaintiff if he was Oscar Vazquez.

65.  The Plaintiff stood up from the chair and indicated, as he was standing up, that he was Oscar Vazquez and why were they asking.

66.  At that point and without fore-warning or justification for such, Defendant Doe punched the Plaintiff in his face.

67.  The Plaintiff did nothing other than to stand up, get out the chair in which he was sitting and to affirm, in response to the question posed to him by Defendants Coughlin and Doe, that, yes,  he was Oscar Vazquez; and why were they asking.

68.  The Plaintiff did nothing else that was verbally or physically threatening.

69.  The Plaintiff suffered a black eye; and felt pain in his face and fore-head.

70.  The Plaintiff was handcuffed.

71.  The Plaintiff was then propelled to the ground and he was dragged by the Defendants to the police vehicle across the street.

72.  The Plaintiff suffered pain about his body as he was being dragged by the Defendant police officers.

73.  There was no justification for the dragging of the Plaintiff by the Defendants to the police vehicle.

74.  The punch to the face and the dragging of the Plaintiff were unreasonable, unnecessary, and excessive utilization of force by the Defendants, individually and collectively.

75.  The Plaintiff was transported to the 115th Precinct.

76.  He was processed at the Precinct; and, then, transported by New York City police officers to the Elmhurst Hospital where he was examined and received treatment for the injuries that he suffered as a consequence of the encounter which he had with the

8

Defendants Coughlin and Doe back at 32-37 97th Street, East Elmhurst, Queens, New York.

77.  The Plaintiff received an x-ray to determine whether the eye orbital had been broken or otherwise damaged (which it had not been broken or otherwise damaged).

78.  Thereafter the Plaintiff was transported back to the 115th Precinct in the custody of New York City Police Officers.

79.  The Plaintiff continued to suffer pain while in the custody of the New York City Police Department at its 115th Precinct facility.

80.  Eventually the Plaintiff was transported to Queens Central Booking.

81.  The Plaintiff was brought before a judge; and he was released on his own recognizance (without bail).

82.  Plaintiff was charged with Menacing in the Second Degree, Criminal Mischief in the Fourth Degree, Arson in the Fifth Degree, Endangering the Welfare of a Child, Criminal Trespass in the Third Degree, and Harassment in the Second Degree.

83.  The deponent on the Criminal Court Complaint is Defendant Coughlin, who states as follows:

> DEPONENT IS INFORMED BY THE COMPLAINANT, [name of Plaintiff's sister provided], THAT AT THE ABOVE MENTIONED DATE, TIME AND PLACE OF OCCURRENCE THE DEFENDANT, OSCAR VAZQUEZ, DID GO ONTO HER PORCH AND LITE A BLANKET ON FIRE.
>
> DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE ABOVE MENTIONED ACTIONS WERE WITNESSED BY HER ELEVEN YEAR OLD DAUGHTER, [name of Plaintiff's neice provided], WAS PRESENT AND WITNESSED THE ABOVE MENTIONED ACTIONS.
>
> DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT SHE IS THE LEGAL CUSTODIAN OF THE ABOVE

MENTIONED PORCH AND BLANKET AND THAT THE DEFENDANT DID NOT HAVE PERMISSION OR AUTHORITY TO OCCUPY SAID PORCH AND BURN SAID BLANKET OR TO DAMAGE SAID BLANKET.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE ABOVE MENTIONED ACTIONS DID CAUSE HER ANNOYANCE, ALARM AND PUT HER IN FEAR FOR HER PHYSICAL SAFETY.

84. A supporting deposition attesting to the truth of these allegations was signed by Plaintiff's sister.

85. On information and belief, however, neither Defendant Coughlin nor Defendant Doe made any attempts to speak with, and did not speak with, the eleven year old child, to see what she had actually witnessed and whether it was indicative in any way of an intentional lighting of the blanket on fire.

86. On information and belief neither Defendant Coughlin nor Defendant Doe made any attempts to ascertain whether Plaintiff was ever placed on notice that he was not permitted to be on the porch, or otherwise present in or about the property where so many members of his immediate family lived.

87. Plaintiff was therefore arrested by Defendants Coughlin and Doe without probable cause, and a prosecution was initiated against plaintiff by Defendants Coughlin and Doe without probable cause to believe there was merit to the charges and that the charges would be able to succeed.

88. Some of the charges against Plaintiff were dismissed in or around the fall of 2014. Eventually, in November 15, 2015, the remainder of the charges, which had been preferred against the Plaintiff on May 9, 2013 relating to the situation that arose on May

6, 2013, were conditionally dismissed, and will be dismissed in their entirety in a year's time pursuant to the terms of the conditional dismissal.

89.  The Plaintiff was subjected to unreasonable, unnecessary and excessive force in connection with the stop, detention, and custodial arrest; and in addition to unnecessary and excessive and unreasonable conditions of the stop, detention, and custodial arrest of the Plaintiff.

90.  There was no justification for the unnecessary, unreasonable, and excessive force which was utilized by the New York City Police Officers in connection with the stop, detention and the custodial arrest and all associated therewith.

91.  While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City Police Officers and as agents and employees of the City of New York.

92.  The actions and conduct herein described and the policies, practices, protocols and training related thereto violated the Plaintiff's rights as guaranteed under the Civil rights Act of 1871, 42 U.S.C. Section 1983,and the Fourth and Fourteenth Amendments to the United States Constitution; and, as well, under the Americans With Disabilities Act, 42 U.S.C. Sections 12101, *et seq*.

93.  The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering.

94. The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

95. The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

## V. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

96. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97. The Plaintiff was falsely arrested, maliciously prosecuted, subjected to abuse of process, and subjected to unnecessary, unreasonable and excessive force in violation of his rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. The Defendant Officers further failed to intervene to prevent their fellow officers' violation of Plaintiff's rights.

98. The Plaintiff suffered injuries and damages.

### B. SECOND CAUSE OF ACTION

99. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100. It is believed that the Defendant Officers knew or should have known that the Plaintiff was diagnosed with a mental condition that required special and appropriate treatment when he was being addressed by them as described previously.

101.  It is believed that the Defendant Officers were not provided policy, protocols, and training relative thereto, if any, to govern their conduct when inter-acting with an individual whom they knew to be or should have known was laboring under a mental disability as it is believed they knew or should have known was the situation with the Plaintiff when they approached him and commenced their inter-action with him.

102.  It is believed that the Defendant Officers' conduct was propelled by the inadequate policies and protocols of the City of New York and the training by the City of New York with respect to the inter-action of the Defendant City's police officers with individuals whom they know or should have known to be laboring under a mental disability.

103.  The policies and practices and training of the City of New York related thereto violated the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

104.  The Plaintiff suffered injuries and damages.

## C.  THIRD CAUSE OF ACTION

105.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

106.  It is believed that, when the Plaintiff was transported by the Defendants to the Precinct as previously described, it appeared to the Desk Officer that the Plaintiff had been injured.

107.  It is believed that the Defendant Officers, individually and acting together and in concert with each other, concealed how it was that the Plaintiff came to be injured—

through the conduct of the Defendant Officers, individually and collectively; and that

they provided information that was not truthful and was designed to cover up for their

otherwise wrongful, excessive, and unnecessary, and unreasonable force that had caused

the visible injuries to the Plaintiff.

108.  The Defendants conduct (actions and inaction) violated the Plaintiff's rights as

guaranteed to him under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the

Fourth and Fourteenth Amendments to the United States Constitution.

109.  The Plaintiff suffered injuries and damages.

### D.  FOURTH CAUSE OF ACTION

110.  The plaintiff incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

111.  It is believed that there exists a custom and practice within the New York City

Police Department for members of the force to conceal and cover up their own wrongful

conduct and the wrongful conduct of which they are aware taken by fellow and sister

others; and that the City of New York is aware of that custom and practice and tolerates

the same even while professing that the custom and practice does not exist and/or that the

City of New York does not tolerate such.

112. It is believed that the custom and practice, sometimes known as the "blue wall of

silence" or the "blue code of silence" and the tolerance of such propelled the Defendant

Officers to act as they did because of a belief that they could due to the tolerance and less

than vigorous enforcement of the Rules and Regulations of the City of New York with

respect to the reporting requirements by police officers of wrongful conduct on the part of

14

their fellow and sister officers; and specifically in this matter the reporting of the use of force against an individual.

113.    The policies and practices and training of the City of New York related thereto violated the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

114.    The Plaintiff suffered injuries and damages.

## E.  FIFTH CAUSE OF ACTION

115.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.    The actions and conduct and policies, practices, protocols, customs, and training inter-related thereto violated the Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. Sections 12101, *et seq*.

117.    The Plaintiff suffered injuries and damages.

## F.  SIXTH CAUSE OF ACTION

118.    The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    When the City of New York represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers (which is almost always the case in 99.99 percent if not more of the situations where an Officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

120.  It is believed that the Officer-employee executes a retainer indemnification and representation letter which requires the Officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant City of New York.

121.  It is believed, moreover, that, when a judgment is obtained against a New York City Police Officers for an Officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the Officer has been represented by the New York City Attorney's Office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the Officer almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of discipline; and it is believed that, when a settlement has been made in such a litigation, the Officer ordinarily is never even informed of such.

122.  It is believed, moreover, that when a judgment is obtained against a New York City Police Officer being represented by the New York City's attorney office for the violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the Officer in any form or fashion for his or her unlawful and unconstitutional conduct and/or that the City does not change those policies and practices that propelled said conduct.

123.  The City of New York is, under the circumstances, the real party in interest.

124.  The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

16

125.  Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

126.  The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

127.  The Plaintiff suffered injuries and damages.


WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

> [a] Invoke the jurisdiction of this Court.
>
> [b] Award appropriate compensatory and punitive damages.
>
> [c] Award appropriate declaratory and injunctive relief.
>
> [d] Empanel a jury.
>
> [e] Award attorney's fees and costs.
>
> [f] Award such other and further relief as the Court deems is in the interest of justice.

DATED: New York, New York
      May 5, 2016

                Respectfully submitted

                /s/James I. Meyerson_____
                JAMES I. MEYERSON
                5 Bryant Park
                Suite # 820 (c/o NAACP)
New York, New York 10018
(212) 344-7474/Extension 129
(212) 344-4447 [FAX]
jimeyerson@yahoo.com

JEFFREY A. ROTHMAN
315 Broadway-Suite # 200
New York, New York 10007
(212) 227-2980
(212) 591-634 [FAX]
rothman.jeffrey@gmail.com

ATTORNEYS FOR PLAINTIFF